**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

CASE NO. 05-TP-80006-ALL
JUDGE MIDDLEBROOKS *BROWN*

UNITED STATES OF AMERICA,      )
)
)
)
v.                             )        **MARC COLLINS-RECTOR'S**
)        **EMERGENCY REQUEST FOR**
)        **TRAVEL TO LONDON, ENGLAND**
MARC COLLINS-RECTOR,           )        **FOR EMERGENCY BRAIN SURGERY**
)
Defendant.                     )
)
————————————————————           )
)

COMES NOW, Marc Collins-Rector, by and through undersigned counsel, and

files this "Emergency Motion for Travel to London, England for Emergency Brain

Surgery." Mr. Collins-Rector asks the Court to allow him to travel to London, England

as soon possible to have emergency brain surgery to remove a tumor.

Mr. Collins-Rector is under the treatment of Dr. John Caronna, a Professor of

Neurology at Cornell University Medical School. Dr. Caronna has determined that Mr.

Collins-Rector has a brain tumor and needs emergency surgery to correct the problem.

Without the surgery, Mr. Collins-Rector is at risk of having a seizure or blackout at any

time, and he is at risk of falling into a coma or death. Dr. Caronna has recommended that

Mr. Collins-Rector receive immediate treatment from Dr. David Thomas at The Institute

of Neurology at the National Hospital Queen Square in London, England. According to

Dr. Caronna, Dr. Martin is "the best person to perform this surgery."

Mr. Collins-Rector has been on supervised release for approximately a year and a half. The term runs from 10/6/04 through 10/5/07. He is in full compliance with all of the terms of his supervised release, and he has no record of violations of any terms of his supervised release. Mr. Collins-Rector's supervising probation officer is Paul Cresce of the U.S. Probation Office in Key West, Florida. Mr. Cresce is aware of this application.

## I.      Background

### A.      Mr. Collins-Rector and the Terms of Supervised Release.

On October 6, 2004, the United States District Court for the District of New Jersey entered a Judgment in Mr. Collins-Rector's criminal case (a copy of the Judgment and the relevant plea agreements are attached as Exhibit A). Mr. Collins-Rector received a sentence of time served and a period of supervised release of three years. On January 12, 2005, this Court accepted jurisdiction of Mr. Collins-Rector's supervised release. Mr. Collins-Rector is living in Key Largo, Florida, and he is under the supervision of U.S. Probation Officer Paul Cresce, of the U.S. Probation Office in Key West, Florida.

Mr. Collins-Rector pleaded guilty to three offenses which involved the transportation of a minor in interstate commerce with the intent to engage in sexual activities.

Mr. Collins-Rector's supervised release terms include the following requirements (among others):

1.      Mr. Collins-Rector was required to pay a special assessment of $900;

2.      Mr. Collins-Rector may not use alcohol or illegal drugs, and he must submit to drug testing as required;

3.      Mr. Collins-Rector must participate in counseling;

2

4.    Mr. Collins-Rector must register as a sex offender with appropriate
state agencies;

5.    Mr. Collins-Rector must maintain a job, and he must provide
monthly financial statements to his Probation Officer;

With regard to travel, Mr. Collins-Rector originally required written permission

from his supervising probation officer prior to making domestic trips outside of the

Southern District of Florida. This Court changed this condition in its January 5, 2006

Order (a copy of the order is attached as Exhibit B). Since that time, Mr. Collins-Rector

has been able to travel to New York City, Los Angeles, and Washington, D.C., without

prior written permission of the Court or probation officer.

Prior to international travel, Mr. Collins-Rector must receive the Court's

permission. The relevant travel restrictions read:

> The Defendant shall not leave the judicial district without permission of
> the court or probation officer.
>
> You may not leave the Southern District of Florida without permission of
> the Probation Officer. Any travel outside of the district requires advance
> **written** permission. No travel will be allowed during the initial
> assessment period of 60 days, except for verifiable emergency situations.
> All requests for travel within the United States should be made at least 2
> weeks in advance; requests for travel outside the United States should be
> made 30 days in advance as permission must be granted by the Court/
> Parole Commission. Travel requests may be denied if any monetary
> obligations are delinquent or if the costs of travel would interfere with
> Court ordered payments (emphasis in original) (a copy of the document
> "Information for Individuals Convicted of Felony Offenses" in the
> Southern District of Florida is attached as Exhibit C).

Through this motion, Mr. Collins-Rector asks the Court to allow him to travel to

London, England as soon as possible so he may have the brain tumor removed.

3

B.    Mr. Collins-Rector Medical Condition.

In mid February, Mr. Collins-Rector suffered a blackout prior to a business meeting in New York City, and a colleague found Mr. Collins-Rector on the floor of his hotel room.  After the attack, Mr. Collins-Rector suffered head pain; weakness and numbness on the left side of his body; and weakness and numbness on the left side of his face.

After consulting with another doctor, Mr. Collins-Rector met with Dr. John Caronna at the end of February.  Dr. Caronna is the Louis and Gertrude Fell Professor of Neurology at Cornell University Medical College in New York.  Dr. Caronna is the Vice Chairman of Cornell Medical College's Department of Neurology and Neurosciences, and he is a world renowned expert in the field of brain disorders.

Dr. Caronna ordered a brain scan and other tests.  Through this work, Dr. Caronna determined that Mr. Collins-Rector has a sphenoid wing meningioma (a copy of the test results, including an MRI are attached as Exhibit D).  Dr. Caronna has prescribed medication for Mr. Collins-Rector to reduce the possibility of another blackout.

According to Dr. Caronna in a letter dated March 17, 2006, Mr. Collins-Rector requires immediate surgery because the tumor is causing pressure and damage to the brain tissue that surrounds it.  Without immediate surgery, Dr. Caronna believes that Mr. Collins-Rector could suffer additional seizures.  Moreover, surgery is necessary "to prevent enlargement of the tumor that could cause further brain damage and eventually could lead to coma and death."

Dr. Caronna has concluded that the best doctor to perform the surgery is located in London, England.  He wrote in Exhibit E:

In consultation with my colleagues, I have determined that Professor David Thomas, Professor of Neurosurgery at the Institute of Neurology and Neurosurgery at the National Hospital Queen Square, London, is the best person to perform this surgery. Professor Thomas has had extensive experience in stereotactic and functional neurosurgery and in the field of neuron-oncology, that is the treatment of brain tumors. I have referred Mr. Collins-Rector to Professor Thomas in London and Professor Thomas has agreed to undertake his evaluation and treatment. I, therefore, have recommended to Mr. Collins-Rector that he go to London for evaluation and treatment and that following surgery he will need a recovery lasting from three to six months.

Dr. Thomas is willing to treat Mr. Collins-Rector. In an e-mail to Dr. Caronna dated March 17, 2006, Dr. Thomas explained that he could meet with Mr. Collins-Rector in London on March 28th and "make plans for operating on his sphenoid wing meningioma (a copy of the e-mail is attached as Exhibit F)."[1]

Mr. Collins-Rector's health is deteriorating rapidly. He suffers from head pain, exhaustions, dizziness, and periods of "grey outs." In these instances, Mr. Collins-Rector does not completely lose consciousness, but he believes he is close to a black out. Because of these symptoms, Mr. Collins-Rector is unable to drive, and has difficulty walking at times. In addition, where Mr. Collins-Rector could work for an entire day as recently as February, such a schedule is now impossible.

On March 17, 2006, counsel for Mr. Collins-Rector wrote to Mr. Paul Cresce to advise him of Mr. Collins-Rector's request for permission to travel to London for medical care (a copy of the letter is attached as Exhibit F). In a subsequent telephone conversation, Mr. Cresce told counsel that he would not have the authority to approve international travel, and that Mr. Collins-Rector should seek relief from the Court. At

---

[1] Mr. Collins-Rector is aware that the chances of making the March 28th appointment are virtually impossible. Accordingly, he respectfully asks the Court to allow him to schedule an appointment as quickly as possible.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

this time, Mr. Cresce has not communicated the position of the U.S. Probation

Department regarding Mr. Collins-Rector's request.

## II.   Argument

A.   <u>The Court Should Allow Mr. Collins-Rector to Travel for Surgery</u>.

This request is literally a matter of life and death for Mr. Collins-Rector.  He has a

brain tumor that requires immediate surgery, and if remedial steps are not taken, he could

lapse into a coma and die.

Mr. Collins-Rector has received this diagnosis from one of the world's

preeminent brain doctors, and the prescription is clear and unequivocal.  The best person

to perform the necessary surgery is located in London, England.  Accordingly, Mr.

Collins-Rector respectfully asks this Court to allow him to travel to London as soon as

possible to have the surgery and recuperate.

Mr. Collins-Rector has already proven that he is capable of accepting the

responsibility of the requested travel.  He has traveled numerous times to New York, and

he had made trips to Washington, D.C. and Los Angeles.  With all of this movement

(which has included being away from the Southern District of Florida for periods of over

a week), Mr. Collins-Rector has not had a single problem or incident.

This behavior is consistent with Mr. Collins-Rector's overall performance during

his period of supervised release.  Mr. Collins-Rector is in full compliance with every

condition of his probation and he is in regular contact with Mr. Cresce.  In fact, when it

has been necessary, he has flown on a private jet to ensure that he could attend his weekly

counseling sessions in Miami.  This practice (which comes at enormous expense)

indicates how seriously Mr. Collins-Rector takes his responsibilities to this Court, to his sentence, and to Mr. Cresce.

Obviously, Mr. Collins-Rector will continue to abide by all of the conditions of his supervision while in London.  In addition, since he will be unable to attend the weekly counseling sessions in Miami, Mr. Collins-Rector is willing to hire a private counselor to continue his weekly counseling sessions.  Similarly, he is willing to accept any reporting requirements that the Court sees fit to impose because he will be physically distant from Mr. Cresce.  If necessary, Mr. Collins-Rector is willing to hire security guards to supervise him during his stay in England.

At the same time, though, there should be no need for additional supervision in London because of the nature of Mr. Collins-Rector's stay.   After all, for the bulk of the time in London, Mr. Collins-Rector will be either in the hospital or in some type of recuperation facility.

Finally, to the extent the Court desires, Mr. Collins-Rector will waive extradition to the United States as a condition of his permission to travel.  In this way, if there is any problem, the United States will have complete assurance that it can require Mr. Collins-Rector to return.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

### III.    Conclusion

For the foregoing reasons, Mr. Collins-Rector respectfully requests that the Court

grant his motion to allow him to travel to London, England to have his brain surgery with

Dr. Thomas.

Respectfully submitted,

GREENBERG TRAURIG, P.A.
Attorneys for Marc Collins-Rector
1221 Brickell Avenue
Miami, Florida  33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

By: _____

For MARK P. SCHNAPP
    Florida Bar No. 501689
    STEPHEN JAMES BINHAK
    Florida Bar No. 0736491

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via facsimile and U.S. Mail this 28th day of March, 2006 to all counsel of record on the attached Service List.

for Stephen James Binhak

## SERVICE LIST

United States Attorneys Office
Southern District of Florida
West Palm Beach Office
500 S. Australian Ave. Ste. 400
W. Palm Beach, FL  33401
(561) 820-8711
(561) 820-8777 facsimile

Paul Cresce
U.S. Probation Officer
U.S. Courthouse and Post Office, Ste. 230
301 Simonton Street
Key West, FL  33040
(305) 295-8140

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

# **EXHIBIT A**

AO 245 B (Rev. 12/03) Sheet 1 - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## District of New Jersey

UNITED STATES OF AMERICA

v.

Case Number   CR00-567(MLC)
CR04-363(MLC)

MARC COLLINS-RECTOR

Defendant.

## JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

The defendant, MARC COLLINS-RECTOR, was represented by David Schafer, AFPD.

On motion of the United States the court has dismissed counts 1-4 from CR00-567.

The defendant pled guilty to count 5 of the INDICTMENT in CR00-567 and counts 1-8 of the INFORMATION in CR04-363 on June 10, 2004. Accordingly, the court has adjudicated that the defendant is guilty of the following offense:

| Title & Section | Nature of Offense | Date of Offense | Count Numbers |
|---|---|---|---|
| 18:2423(a) | TRANSPORTATION OF A MINOR WITH INTENT TO ENGAGE IN SEXUAL ACTIVITIES | May 1996 | 5 from CR00-567 |
| 18:2422(a) | TRAVEL IN INTERSTATE COMMER CE WITH INTENT TO ENGAGE IN SEXUAL ACTIV ITIES WITH A MINOR | June 1995 - July 1999 | 1,3,5&7 from CR04-363 |
| 18:2423(a) | TRANSPORTATION OF A MINOR WITH INTENT TO ENGAGE IN SEXUAL ACTIVITIES | June 1995 - July 1999 | 2,4,6&8 from CR04-363 |

As pronounced on October 6, 2004, the defendant is sentenced as provided in pages 2 through 6 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant shall pay to the United States a special assessment of $900, for count 5 from CR00-567, and counts 1-8 from CR04-363, which shall be due immediately. Said special assessment shall be made payable to the Clerk, U.S. District Court.

Signed this the 6 day of October, 2004.

_____
MARY L. COOPER
United States District Judge

RECEIVED

OCT 6 2004

3:30
AT 8:30
WILLIAM T. WALSH      M

AO 245 B (Rev. 12/03) Sheet 2 - Imprisonment

Defendant:    MARC COLLINS-RECTOR
Case Number:  CR00-567/CR04-363

Judgment – Page 2 of 6

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of time served.

## RETURN

I have executed this Judgment as follows:

_____

_____

_____

Defendant delivered on _____ To _____

At _____, with a certified copy of this Judgment.

_____
United States Marshal

By _____
Deputy Marshal

AO 245 B (Rev. 12/03) Sheet 3 - Supervised Release

Defendant:      MARC COLLINS-RECTOR
Case Number:   CR00-567/CR04-363

### SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of 3 years.

Within 72 hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the Probation Office in the district to which the defendant is released.

While on supervised release, the defendant shall comply with the standard conditions that have been adopted by this court (on the next page).

The defendant shall submit to one drug test within 15 days of commencement of supervised release and at least two tests thereafter as determined by the probation officer.

If this judgment imposes a fine, special assessment, costs, or restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine, assessments, costs, and restitution that remains unpaid at the commencement of the term of supervised release and shall comply with the following special conditions:

The defendant shall refrain from the use of alcohol and shall submit to testing to ensure compliance. It is further ordered that the defendant submit to evaluation and treatment if directed by the U.S. Probation Office. The defendant shall abide by the rules of any program and remain in treatment until satisfactorily discharged with the approval of the U.S. Probation Office.

The defendant shall refrain from the illegal possession and/or use of drugs and shall submit to urinalysis or other forms of testing to ensure compliance. It is further ordered that the defendant shall submit to drug treatment, on an outpatient or inpatient basis, if directed by the U.S. Probation Office. The defendant shall abide by the rules of any program and shall remain in treatment until satisfactorily discharged with the approval of the U.S. Probation Office.

The defendant shall provide the U.S. Probation Office with full disclosure of his financial records to include yearly income tax returns upon the request of the U.S. Probation Office. The defendant shall cooperate with the probation officer in the investigation of his financial dealings and shall provide truthful monthly statements of his income.

The defendant shall participate in a mental health program for evaluation and/or treatment as directed by the U.S. Probation Office. The defendant shall remain in treatment until satisfactorily discharged and with the approval of the U.S. Probation Office.

The defendant is prohibited from incurring any new credit charges or opening additional lines of credit without the approval of the probation officer, unless the defendant is in compliance with a payment schedule for any fine obligation. The defendant shall not encumber or liquidate interest in any assets unless it is in direct service of the fine obligation or otherwise has the express approval of the Court.

The defendant shall follow the directions of the U.S. Probation Office regarding any contact with children of either sex, under the age of 18. The defendant shall not obtain employment or perform volunteer work which includes, as part of its job/work description, contact with minor children. The defendant shall not maintain, within his or her residence or within any outside establishment within his/her control or custody, a collection of films, slides, pictures, tapes, videotapes or other form of pictorial representation whose subject matter involves minor children of either sex and can be deemed to be pornographic. The probation officer shall have the right of reasonable search of the defendant, his/her residence, or any other establishment within the defendant's custody or control, and shall, if necessary, request the assistance of other law enforcement personnel to enforce the provisions of this special condition.

The defendant shall register with the state sex offender registration agency in any state where the defendant resides, is employed, carries on a vocation, or is a student, as directed by the probation officer.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

AO 245 B (Rev. 12/03) Sheet 3 - Supervised Release

Judgment – Page 4 of 6

Defendant:      MARC COLLINS-RECTOR
Case Number:   CR00-567/CR04-363

The defendant shall submit to an initial inspection by the probation office, and to any unannounced examinations during supervision, of the defendant's computer equipment. The defendant shall allow the installation on the defendant's computer of any hardware or software systems which monitor computer use. The defendant shall abide by the standard conditions of computer monitoring that have been adopted by this court.

The defendant will be supervised in the district of residence.

Case 9:05-tp-80006-DMM   Document 7   Entered on FLSD Docket 03/29/2006   Page 15 of 64

AO 245 B (Rev. 12/03) Sheet 3a - Supervised Release

Judgment – Page 5 of 6

Defendant:      MARC COLLINS-RECTOR
Case Number:    CR00-567/CR04-363

## STANDARD CONDITIONS OF SUPERVISED RELEASE

While the defendant is on supervised release pursuant to this Judgment:

1)  The defendant shall not commit another federal, state, or local crime during the term of supervision.

2)  The defendant shall not illegally possess a controlled substance.

3)  If convicted of a felony offense, the defendant shall not possess a firearm or destructive device.

4)  The defendant shall not leave the judicial district without the permission of the court or probation officer.

5)  The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month.

6)  The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.

7)  The defendant shall support his or her dependents and meet other family responsibilities.

8)  The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.

9)  The defendant shall notify the probation officer within seventy-two hours of any change in residence or employment.

10) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer any narcotic or other controlled substance, or any paraphernalia related to such substances.

11) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

12) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.

13) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.

14) The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

15) The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.

16) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

*For Official Use Only - - - U.S. Probation Office*

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision or (2) extend the term of supervision and/or modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions, and have been provided a copy of them.

You shall carry out all rules, in addition to the above, as prescribed by the Chief U.S. Probation Officer, or any of his associate Probation Officers.                    (Signed) _____

                                                                    Defendant                          Date

                                                _____
                                                U.S. Probation Officer/Designated Witness          Date

AO 245 B (Rev. 12/03) Sheet 5 - Fine

Defendant:     MARC COLLINS-RECTOR
Case Number:   CR00-567/CR04-363

## FINE

The defendant shall pay a fine of $200.

This fine is due immediately and shall be paid in monthly installments of no less than $25 to commence 30 days after the date of this judgment.

The Court determines that the defendant does not have the ability to pay interest and therefore waives the interest requirement pursuant to 18 U.S.C. § 3612(f)(3).

I HEREBY CERTIFY that the above and
foregoing is a true and correct copy
of the original on file in my office.
UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
WILLIAM T. WALSH, CLERK
By:
                    Deputy Clerk

If the fine is not paid, the court may sentence the defendant to any sentence which might have been originally imposed. See 18 U.S.C. § 3614.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest, (7) penalties, and (8) costs, including cost of prosecution and court costs.



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

970 Broad Street, Suite 700          973/645-2700
Newark, NJ 07102

March 31, 2004

David E. Schafer, Esq.
22 South Clinton Avenue
Station Plaza 4, 4th Floor
Trenton, New Jersey 08609

CR00-567(MLC)

      Re: <u>Plea Agreement with Marc Collins-Rector</u>

Dear Mr. Schafer:

      This letter sets forth the full and complete agreement between your client, Marc Collins-Rector, and the United States Attorney for the District of New Jersey ("this Office").

<u>Charge</u>

      Conditioned on the understandings specified below, this Office will accept a guilty plea from Marc Collins-Rector to count 5 of the indictment, Criminal No. 00-567(MLC), which charges transporting a minor in interstate commerce with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a). If Marc Collins-Rector enters a guilty plea and is sentenced on this charge, and otherwise fully complies with all of the terms of this agreement, this Office will not initiate any further criminal charges against Marc Collins-Rector for the acts alleged more fully in the indictment, Criminal No. 00-567(MLC) committed against the victim J.W. In addition, if Marc Collins-Rector fully complies with all of the terms of this agreement, at the time of sentencing in this matter, this Office will move to dismiss counts 1-4 of the indictment, Criminal No. 00-567(MLC), against Marc Collins-Rector. However, in the event that the judgment of conviction entered as a result of this guilty plea does not remain in full force and effect, any dismissed charges and any other charges that are not time-barred by the applicable statute of limitations on the date this agreement is signed by Marc Collins-Rector may be commenced against him, notwithstanding the expiration of the limitations period after Marc Collins-Rector signs the agreement. Marc Collins-Rector agrees to waive any statute of limitations with respect to any crime that would otherwise expire after Marc Collins-Rector signs the agreement.

Sentencing

The violation of 18 U.S.C. § 2423(a) to which Marc Collins-Rector agrees to plead guilty carries a statutory maximum prison sentence of ten years, and a statutory maximum fine of $250,000.[1]  Fines imposed by the sentencing judge may be subject to the payment of interest.

The sentence to be imposed upon Marc Collins-Rector is within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act, 18 U.S.C. § 3551-3742 and the United States Sentencing Guidelines. The sentencing judge may impose the maximum term of imprisonment and maximum fine that are consistent with the Sentencing Reform Act and the Sentencing Guidelines, up to and including the statutory maximum term of imprisonment and the maximum statutory fine.  The United States Sentencing Guidelines may impose a minimum term of imprisonment and/or fine, and may authorize departure from the minimum and maximum penalties under certain circumstances.  This Office cannot and does not make any representation or promise as to what guideline range will be found applicable to Marc Collins-Rector, or as to what sentence Marc Collins-Rector ultimately will receive.

Further, in addition to imposing any other penalty on Marc Collins-Rector, the sentencing judge:  (1) will order Marc Collins-Rector to pay an assessment of $50 pursuant to 18 U.S.C. § 3013, which assessment must be paid by the date of sentencing; and (2) pursuant to 18 U.S.C. § 3583 and § 5D1.2 of the Sentencing Guidelines, may require Marc Collins-Rector to serve a term of supervised release of at least two years and up to three years, which will begin at the expiration of any term of imprisonment imposed.  Should Marc Collins-Rector be placed on a term of supervised release and subsequently violate any of the conditions of supervised release before the expiration of its term, Marc Collins-Rector may be sentenced to not more than two years' imprisonment in addition to any prior term previously imposed, regardless of the statutory maximum term of imprisonment set forth above and without credit for time previously served on post-release supervision, and may be sentenced to an additional term of supervised release.

---

[1]  The maximum penalties for the offense are governed by the United States Code as codified in the 1996 edition.

Rights of this Office Regarding Sentencing

        Except as otherwise provided in this agreement, this
Office reserves its right to take any position with respect to
the appropriate sentence to be imposed on Marc Collins-Rector by
the sentencing judge, to correct any misstatements relating to
the sentencing proceedings, and to provide the sentencing judge
and the United States Probation Office all law and information
relevant to sentencing, favorable or otherwise.   In addition,
this Office may inform the sentencing judge and the United States
Probation Office of:   (1) this agreement; and (2) the full nature
and extent of Marc Collins-Rector's activities and relevant
conduct with respect to this case.

Stipulations

        This Office and Marc Collins-Rector agree to stipulate
at sentencing to the statements set forth in the attached
Schedule A, which hereby is made a part of this plea agreement.
This agreement to stipulate, however, cannot and does not bind
the sentencing judge, who may make independent factual findings
and may reject any or all of the stipulations entered into by the
parties.   To the extent that the parties do not stipulate to a
particular fact or legal conclusion, each reserves the right to
argue the existence of and the effect of any such fact or
conclusion upon the sentence.   Moreover, this agreement to
stipulate on the part of this Office is based on the information
and evidence that this Office possesses as of the date of this
agreement.   Thus, if this Office obtains or receives additional
evidence or information prior to sentencing that it determines to
be credible and to be materially in conflict with any stipulation
in the attached Schedule A, this Office shall not be bound by any
such stipulation.   A determination that any stipulation is not
binding shall not release either this Office or Marc Collins-
Rector from any other portion of this agreement, including any
other stipulation.   If the sentencing court rejects a
stipulation, both parties reserve the right to argue on appeal or
at post-sentencing proceedings that the sentencing court was
within its discretion and authority to do so.   These stipulations
do not restrict the Government's right to respond to questions
from the Court and to correct misinformation that has been
provided to the Court.

<u>Appeal and Post-Sentencing Rights</u>

The United States specifically reserves the right to file, oppose, or take any position in any appeal, collateral attack, or proceedings involving post-sentencing motions or writs.

<u>Other Provisions</u>

This agreement is limited to the United States Attorney's Office for the District of New Jersey and cannot bind other federal, state, or local authorities. However, this Office will bring this agreement to the attention of other prosecuting offices, if requested to do so.

This agreement was reached without regard to any civil or administrative matters that may be pending or commenced in the future against Marc Collins-Rector. This agreement does not prohibit the United States, any agency thereof (including the Internal Revenue Service and Immigration and Customs Enforcement), or any third party from initiating or prosecuting any civil proceeding against Marc Collins-Rector.

This agreement constitutes the full and complete agreement between Marc Collins-Rector and this Office and supersedes any previous agreement between them. No additional promises, agreements, or conditions have been entered into other than those set forth in this letter, and none will be entered into unless in writing and signed by the parties.

Very truly yours,

CHRISTOPHER J. CHRISTIE
United States Attorney

By: MARC LARKINS
Assistant U.S. Attorney

APPROVED:

Unit Chief, Criminal Division

- 4 -

I have received this letter from my attorney, David E. Schafer, Esq., I have read it, and I understand it fully. I hereby accept the terms and conditions set forth in this letter and acknowledge that it constitutes the full agreement between the parties. There have been no additional promises or representations made to me by any officials or employees of the United States Government or by my attorney in connection with this matter.

AGREED AND ACCEPTED:


_Marc Collins-Rector_ _____     Date: _____
Marc Collins-Rector


_David E. Schafer_ _____     Date: _____
David E. Schafer, Esq.


- 5 -

<u>Plea Agreement With Marc Collins-Rector</u>

<u>Schedule A</u>

This Office and Marc Collins-Rector agree to stipulate at sentencing to the statements set forth below, subject to the conditions in the attached plea agreement.   Pursuant to agreement, the parties stipulate that the United States Sentencing Commission Guidelines Manual effective November 1, 1998, applies to the commission of this offense.

1.   The applicable guideline is § 2A3.2.   This guideline carries a Base Offense Level of 15.

2.   Specific Offense Characteristic (b)(1) applies because the parties agree that the victim was in the custody, care or supervisory control of the defendant.   This Specific Offense Characteristic results in an increase of 2 levels.

3. As of the date of this agreement, Marc Collins-Rector has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the offense charged. This results in a decrease of 2 levels, pursuant to U.S.S.G. § 3E1.1(a), if Marc Collins-Rector's acceptance of responsibility continues through the date of sentencing.

4.   As of the date of this agreement, Marc Collins-Rector has timely notified authorities of an intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently.   If the offense level is 16 or greater, this results in an additional decrease of 1 level, pursuant to U.S.S.G. § 3E1.1(b)(2), unless Marc Collins-Rector indicates an intention not to enter a plea of guilty, thereby forcing the government to prepare for trial.

- 6 -

1  DEBRA W. YANG
   United States Attorney
2  STEVEN D. CLYMER
   Special Assistant United States Attorney
3  Chief, Criminal Division
   TERESA MACK (Cal. State Bar No. 173879)
4  Assistant United States Attorney
   Major Frauds Section
5  RODRIGO A. CASTRO-SILVA (Cal. State Bar No. 185251)
   Assistant United States Attorney
6  Terrorism & Organized Crime Section
        1200 United States Courthouse
7       312 North Spring Street
        Los Angeles, California 90012
8       Telephone:  (213) 894-0500/2262
        Facsimile:  (213) 894-3713
9
   Attorneys for Plaintiff
10 UNITED STATES OF AMERICA

11              UNITED STATES DISTRICT COURT

12        FOR THE CENTRAL DISTRICT OF CALIFORNIA

13 UNITED STATES OF AMERICA,    )  No. CR 04- **378**
                                )
14          Plaintiff,          )  PLEA AGREEMENT FOR DEFENDANT
                                )  MARC JOHN COLLINS RECTOR
15             v.               )
                                )
16 MARC JOHN COLLINS RECTOR,    )
                                )
17          Defendant.          )
                                )
18 _____)

19      1.   This constitutes the plea agreement between MARC JOHN

20 COLLINS RECTOR ("defendant") and the United States Attorney's

21 Office for the Central District of California ("the USAO") in the

22 above-captioned case.  This agreement is limited to the USAO and

23 cannot bind any other federal, state or local prosecuting,

24 administrative or regulatory authorities.

25                            PLEA

26      2.   Defendant gives up the right to indictment by a grand

27 jury and agrees to plead guilty to an eight-count information in

28 the form attached to this agreement or a substantially similar

1  form.

2                    NATURE OF THE OFFENSES

3       3.   In order for defendant to be guilty of counts one,

4  three, five, and seven, which charge violations of Title 18,

5  United States Code, Sections 2422[1] and 2422(a), the following

6  must be true: (1) defendant knowingly persuaded, induced,

7  enticed, or coerced an individual under the age of 18 years to

8  travel in interstate commerce to engage in sexual activity; (2)

9  the sexual activity is one that is illegal under California law,

10 namely, oral copulation with a person under the age of 18 years,

11 in violation of California Penal Code ("PC") § 288a, and lewd and

12 lascivious acts with a child of 14 or 15 years, in violation of

13 California PC § 288(c)(1).[2]

14      In order for defendant to be guilty of counts two, four,

15 six, and eight, which charge violations of Title 18, United

16 States Code, Sections 2423(a) and 2(b), the following must be

17 true: (1) defendant knowingly transported an individual under the

18 age of 18 years (a "minor") from one state to another, or

19 willfully caused the same to be done; (2) defendant did so with

20 the intent that the minor engage in sexual activity; and (3) the

21 sexual activity is one that is illegal under California law,

22 namely, oral copulation with a person under the age of 18 years,

23 in violation of California PC § 288a, and lewd and lascivious

24

25      [1] Defendant understands and agrees that count three of the
26 information charges defendant with a violation of 18 U.S.C.
   § 2422, the statute in effect in 1995.
27
        [2] Count seven charges that the sexual activity is illegal
28 under California PC § 288a.

                                2

1  acts with a child of 14 or 15 years, in violation of California

2  PC § 288(c)(1).[3]

3      Defendant admits that defendant is, in fact, guilty of these

4  offenses as described in counts one through eight of the

5  information.

<u>PENALTIES AND RESTITUTION</u>

7      4.  The statutory maximum sentence that the Court can

8  impose for each violation of Title 18, United States Code,

9  Sections 2422 & 2422(a) is: five or ten[4] years imprisonment; a

10 three-year period of supervised release; a fine of $250,000 or

11 twice the gross gain or gross loss resulting from the offense,

12 whichever is greatest; and a mandatory special assessment of $50

13 or $100.[5]  The statutory maximum sentence that the Court can

14 impose for each violation of Title 18, United States Code,

15 Section 2423(a) is: 10 years imprisonment; a three-year period of

16 supervised release; a fine of $250,000 or twice the gross gain or

17 gross loss resulting from the offense, whichever is greatest; and

18

19

_____

20      [3] Counts two and four charge that the sexual activity is
    illegal under California PC § 288(c)(1).  Count six charges that
21  the sexual activity is illegal under California PC §§ 288a and
    288(c)(1).  Count eight charges that the sexual activity is
22  illegal under California PC § 288a.

23

24      [4] Defendant understands that the statutory maximum sentence
    that the court can impose for a violation of 18 U.S.C. § 2422(a)
25  that occurred during the year 1999 is 10 years imprisonment.

26      [5] Defendant understands that the mandatory special
    assessment that the court can impose for each violation of 18
27  U.S.C. §§ 2422 and 2422(a) that occurred during the years 1995
    and 1996 is $50, and that occurred during the years 1997 and 1999
28  is $100.

3

1  a mandatory special assessment of $50 or $100.[6]  Therefore, the

2  total maximum sentence for all offenses to which defendant is

3  pleading guilty is: 65 years imprisonment; a three-year period of

4  supervised release; a fine of $2,000,000 or twice the gross gain

5  or gross loss resulting from the offenses, whichever is greatest;

6  and a mandatory special assessment of $600.

7       5.   Defendant understands that defendant will be required

8  to pay full restitution to the victims of the offenses.

9  Defendant agrees that, in return for the USAO's compliance with

10 its obligations under this agreement, the amount of restitution

11 is not restricted to the amounts alleged in the counts to which

12 defendant is pleading guilty and may include losses arising from

13 and charges not prosecuted pursuant to this agreement as well as

14 all relevant conduct in connection with those charges.  Defendant

15 further agrees that defendant will not seek the discharge of any

16 restitution obligation, in whole or in part, in any present or

17 future bankruptcy proceeding.

18      6.   If mandatory restitution does not apply, defendant

19 agrees to make full restitution to the victims of the offenses

20 for the losses caused by defendant's activities.  Defendant

21 agrees that, in return for the USAO's compliance with its

22 obligations under this agreement, the amount of restitution is

23 not restricted to the amounts alleged in the counts to which

24 defendant is pleading guilty and may include losses arising from

25

26 _____

27      [6] Defendant understands that the mandatory special
   assessment that the court can impose for each violation of 18
28 U.S.C. § 2423(a) that occurred during the years 1995 and 1996 is
   $50, and that occurred during the years 1997 and 1999 is $100.

4

1  charges not prosecuted pursuant to this agreement as well as all

2  relevant conduct in connection with those charges.  Defendant

3  further agrees that defendant will not seek the discharge of any

4  restitution obligation, in whole or in part, in any present or

5  future bankruptcy proceeding.

6      7.    Supervised release is a period of time following

7  imprisonment during which defendant will be subject to various

8  restrictions and requirements.  Defendant understands that if

9  defendant violates one or more of the conditions of any

10 supervised release imposed, defendant may be returned to prison

11 for all or part of the term of supervised release, which could

12 result in defendant serving a total term of imprisonment greater

13 than the statutory maximum stated above.

14     8.    Defendant also understands that, by pleading guilty,

15 defendant may be giving up valuable government benefits and

16 valuable civic rights, such as the right to vote, the right to

17 possess a firearm, the right to hold office, and the right to

18 serve on a jury.

19     9.    Defendant further understands that as a condition of

20 supervised release, under 18 U.S.C. § 3583(d), he will be

21 required to register as a sex offender.  Defendant further

22 understands that if he resides in California, he will be subject

23 to the registration requirements of California Penal Code § 290.

24     10.   Defendant further understands that under 18 U.S.C.

25 § 3283 no statute of limitations that would otherwise preclude

26 this prosecution for the offenses alleged in the information

27 which involve the sexual or physical abuse of a child under the

28 age of 18 years shall preclude prosecution of defendant before

1  the children involved in these offenses each reach the age of 25

2  years.  At the time of this plea agreement, none of the minor

3  victims described in the information have attained the age of 25

4  years.

5                              FACTUAL BASIS

6      11.  Defendant and the USAO agree and stipulate to the

7  following statement of facts:

8      While living in Bay City, Michigan in 1995, defendant met

9  two minors (hereinafter referred to as "R.G." and "J.T.") who

10 were in the eighth grade and were approximately 13-14 years old.

11 Defendant invited R.G. and J.T. to sit inside of and wash

12 defendant's black Lamborghini knowing that the R.G. and J.T.

13 would be impressed by the sports car.  Defendant paid R.G. and

14 J.T. $20.00 - $50.00 whenever they washed defendant's

15 Lamborghini.  Within a week of meeting R.G. and J.T., defendant

16 invited them both to his home in Bay City where defendant had

17 video games, a refrigerator filled with different brands of soda,

18 and a large variety of snacks that were used to attract young

19 boys to his home.  Defendant paid R.G. approximately $500 per

20 month and claimed that R.G. was a video game programmer for

21 defendant's company, but in truth and in fact, R.G. did not do

22 any programming of video games.  Defendant continued to entertain

23 R.G., J.T. and other young boys at his Bay City home and also

24 allowed R.G. and J.T. to wash his Lamborghini.

25     On or about June 29, 1995, shortly after defendant moved to

26 California, he sent for R.G. to come to California.  Defendant

27 insisted that R.G. travel to California without J.T. or any other

28 friends or family.  Defendant paid for R.G.'s travel from Bay

                                   6

1    City, Michigan, to California and R.G. stayed at defendant's
2    Beverly Hills home for two weeks.   During this first trip, on or
3    about June 29, 1995, defendant insisted that R.G. come into
4    defendant's jacuzzi without wearing any clothes and defendant
5    performed oral sex on R.G. in defendant's jacuzzi.   By doing the
6    following things, from in or about June 1995, to in or about
7    December, 1996, defendant enticed, persuaded and induced R.G. to
8    travel in interstate commerce and to stay with defendant and
9    engage in criminal sexual activity for which any person can be
10   charged with a criminal offense under California law, namely,
11   oral copulation with another person who is under 18 years of age,
12   a violation of California Penal Code § 288a, and lewd and
13   lascivious acts with a child of 14 or 15 years, a violation of
14   California Penal Code § 288(c)(1).   Defendant took R.G. shopping
15   and paid for R.G. and others to dine at expensive restaurants.
16   When defendant moved to a larger residence in Encino, California,
17   defendant arranged for R.G. to travel from Bay City to California
18   to stay with him at his luxury home in Encino.   Each time that
19   R.G. traveled to California, defendant paid for R.G.'s airfare
20   and any transportation to and from the airports.   Defendant also
21   paid R.G. to act as an employee of defendant's company, although
22   in truth and in fact, R.G.'s only duties were to engage in
23   criminal sexual activity as directed by defendant and to stay at
24   defendant's residence or to accompany defendant on various trips
25   for the same purpose.   Defendant told R.G. that he was going to
26   be part of defendant's successful entertainment company, provided
27   limousine transportation for R.G., took R.G. to Las Vegas,
28   Nevada, where defendant provided accommodations in a luxury

1   suite, took R.G. and others to expensive private parties and to
2   championship sporting events, made alcohol available for R.G. to
3   consume, gave R.G. shares of stock in one of defendant's
4   companies and took R.G. hunting.  When R.G. stayed with defendant
5   in California, defendant performed oral sex on R.G. and/or
6   engaged in criminal sexual activity, including lewd and
7   lascivious acts, with R.G. or directed R.G. to engage in such
8   criminal sexual activity with defendant's adult male partner.  If
9   R.G. refused to engage in criminal sexual activity with defendant
10  or defendant's adult partner, defendant would threaten to send
11  R.G. back to Bay City, Michigan.
12        On or about September 23, 1995, defendant returned to Bay
13  City, Michigan, bought an airline ticket for J.T. and flew with
14  J.T. from Bay City, Michigan to California.  Defendant invited
15  J.T. to stay at defendant's residence in Beverly Hills.
16  Defendant misled J.T. and his parents and said that he wanted
17  J.T. to work as an employee of defendant's company located in
18  California.  In truth and in fact, however, defendant intended to
19  to engage in criminal sexual activity with J.T. and did not
20  intend to employ J.T. at his company.  By doing the foregoing,
21  including those acts specified above while defendant lived in Bay
22  City, defendant enticed, persuaded, and induced J.T. to travel in
23  interstate commerce to engage in criminal sexual activity for
24  which any person can be charged with a criminal offense under
25  California law, namely, lewd and lascivious acts with a child of
26  14 or 15 years.  Once in California, defendant provided J.T. with
27  limousine transportation to defendant's Beverly Hills home and
28  once at defendant's residence, defendant offered J.T. alcohol.

1 Defendant took J.T. on a tour of the home and asked J.T. to come
2 into defendant's jacuzzi without wearing any clothing.  Although
3 J.T. refused to come into the jacuzzi with defendant, defendant
4 later approached J.T. in his bedroom and continued to attempt to
5 engage in criminal sexual activity with J.T. by showing J.T. a
6 pornographic movie depicting two men engaging in homosexual
7 activity.  The following day, defendant took J.T. shopping at
8 various Beverly Hills stores where defendant purchased designer
9 sportswear and other items for J.T. which were worth
10 approximately $900.00.  Defendant also promised to let J.T. drive
11 defendant's Lamborghini and took J.T. out to ride dirt bikes.
12      In or about February, 1997, defendant arranged for a 15 year
13 old boy (hereinafter referred to as "B.L.") to fly from Minnesota
14 to California.  B.L. was interested in becoming a model and
15 defendant claimed that he was seeking a model/actor to work with
16 his entertainment company.  Defendant arranged for B.L. to stay
17 at defendant's Beverly Hills residence.  By doing the following
18 things, from in or about February, 1997 to on or about March 7,
19 1997, defendant enticed, persuaded, and induced B.L. to travel in
20 interstate commerce to engage in criminal sexual activity for
21 which a person can be charged with a criminal offense under
22 California law, namely, oral copulation with a person under the
23 age of 18 years and lewd and lascivious acts with a child of 15
24 years.  On or about March 7, 1997, B.L., at defendant's expense,
25 flew from Minnesota to California.  Once in California, defendant
26 took B.L. to a sporting event and paid for B.L.'s expenses during
27 his stay at defendant's Beverly Hills home.  Defendant promised
28 to give B.L. money for college tuition and a car in exchange for

9

1   oral sex and for B.L. to engage in masturbation with defendant.
2   Defendant repeatedly asked B.L. to engage in criminal sexual
3   activity with him and defendant masturbated B.L.   Defendant
4   continued to entice B.L. to engage in criminal sexual activity by
5   taking him to expensive dinners, allowing B.L. to drive his
6   sports car, and taking B.L. shopping at Beverly Hills designer
7   stores.
8       In or about the early part of 1999, defendant met another
9   minor who, at the time, was 17 years old (hereinafter referred to
10  as "D.S.") at a party at defendant's Encino residence.   During
11  the party, defendant pulled D.S. away from the rest of the guests
12  and told D.S. that in order for D.S. to be involved in the
13  entertainment industry he would have to engage in homosexual
14  activity.   Defendant claimed that he belonged to a powerful group
15  of people who could influence D.S.'s participation in the
16  entertainment industry.   Defendant told D.S. that defendant could
17  tell that D.S. was homosexual although D.S. said that he was not.
18  Defendant began fondling D.S.'s genitals and showed D.S. a
19  portion of a pornographic movie.   Defendant then placed D.S.'s
20  hand on defendant's genitals.   Several weeks later, when D.S. was
21  again at defendant's residence, defendant insisted that D.S. wear
22  no clothing in defendant's jacuzzi.   Defendant fondled D.S. and
23  engaged in oral sex with D.S. in the jacuzzi.   Defendant told
24  D.S. that if D.S. cooperated and engaged in criminal sexual
25  activity with defendant, then defendant would help D.S. get
26  involved in the entertainment industry.   Defendant paid D.S.
27  $600.00 per week to work as a personal assistant to one of
28  defendant's associates.   In truth and in fact, however, D.S.'s

10

1  main duties were to engage in criminal sexual activity with

2  defendant and/or with others at defendant's direction.  Defendant

3  took D.S. and others on trips to Las Vegas, Nevada, where

4  defendant paid for their accommodations in exclusive luxury hotel

5  suites.  Defendant paid all of D.S.'s expenses, including

6  shopping at expensive boutiques for clothing and other items and

7  paying for admission to shows in Las Vegas.  By doing the

8  foregoing things, in or about July 1999, defendant enticed,

9  persuaded, and induced D.S. to travel in interstate commerce,

10  namely, from California to Arizona, to engage in criminal sexual

11  activity for which any person can be charged with a criminal

12  offense under California law, namely, oral copulation with a

13  person under the age of 18 years.  Specifically, in or about

14  July, 1999, defendant transported D.S. and others from California

15  to Lake Havasu, Arizona, in recreation vehicles with the intent

16  that D.S. engage in criminal sexual activity for which any person

17  can be charged with a criminal offense under California law,

18  namely, oral copulation with a person under the age of 18 years.

19  While at Lake Havasu, defendant directed D.S. to engage in

20  criminal sexual activity, including oral copulation, with another

21  adult male.

22              WAIVER OF CONSTITUTIONAL RIGHTS

23      12.  By pleading guilty, defendant gives up the following

24  rights:

25          a)   The right to persist in a plea of not guilty.

26          b)   The right to a speedy and public trial by jury.

27          c)   The right to the assistance of counsel at trial

28  and at every other stage of the proceeding, including, if

11

1  defendant could not afford an attorney, the right to have the

2  Court appoint one for defendant.

3           d)    The right to be presumed innocent and to have the

4  burden of proof placed on the government to prove defendant

5  guilty beyond a reasonable doubt.

6           e)    The right to confront and cross-examine witnesses

7  against defendant.

8           f)    The right, if defendant wished, to testify on

9  defendant's own behalf and present evidence in opposition to the

10 charges, including the right to call witnesses and to subpoena

11 those witnesses to testify.

12          g)    The right not to be compelled to testify, and, if

13 defendant chose not to testify or present evidence, to have that

14 choice not be used against defendant.

15     By pleading guilty, defendant also gives up any and all

16 rights to pursue any affirmative defenses, Fourth Amendment or

17 Fifth Amendment claims, and other pretrial motions that have been

18 filed or could be filed.

19                        <u>SENTENCING FACTORS</u>

20     13.  Defendant understands that the Court is required to

21 consider and apply the United States Sentencing Guidelines

22 ("U.S.S.G." or "Sentencing Guidelines") but may depart from those

23 guidelines under some circumstances.

24     14.  Defendant and the USAO agree and stipulate that the

25 November 1, 1998 United States Sentencing Guidelines Manual

26 applies to defendant's conduct and agree and stipulate to the

27 following applicable sentencing guideline factors:

28 //

                                12

| | | | |
|---|---|---|---|
| Base Offense Level | : | 15 | [U.S.S.G. § 2A3.2(a)] |
| Specific Offense Characteristics (Victims in custody, care of defendant) | : | +2 | [U.S.S.G. § 2A3.2(b)(1)] |
| Adjustments (Grouping for Four Victims) | : | +4 | [U.S.S.G. § 3D1.4] |
| Acceptance of Responsibility | : | -3 | [U.S.S.G. § 3E1.1] |
| TOTAL | : | 18 | |

The USAO will agree to a downward adjustment for acceptance of responsibility only if the conditions set forth in paragraph 19(c) are met.  Defendant and the USAO agree not to seek, argue, or suggest that any other specific offense characteristics, adjustments or departures be imposed.  If, however, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section. Defendant understands that defendant's base offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  In the event that defendant's offense level is so altered, the parties are not bound by the base offense (or adjusted offense) level stipulated to above.

15.  Defendant and the USAO agree and stipulate that the Court sentence defendant to the high-end of the sentencing range so long as the Court determines that defendant's total offense

13

1  level is 18.

2      16.   There is no agreement as to defendant's criminal

3  history or criminal history category.

4      17.   The stipulations in this agreement do not bind either

5  the United States Probation Office or the Court.   The Court will

6  determine the facts and calculations relevant to sentencing.

7  Both defendant and the USAO are free to:  (a) supplement the facts

8  stipulated to in this agreement by supplying relevant information

9  to the United States Probation Office and the Court, (b) correct

10  any and all factual misstatements relating to the calculation of

11  the sentence, and (c) argue on appeal and collateral review that

12  the Court's sentencing calculations are not error, although each

13  party agrees to maintain its view that the calculations in

14  paragraph 14 are consistent with the facts of this case.

15  <u>DEFENDANT'S OBLIGATIONS</u>

16      18.   Defendant agrees:

17          a)   To plead guilty as set forth in this agreement.

18          b)   To not knowingly and willfully fail to abide by

19  all sentencing stipulations contained in this agreement.

20          c)   To not knowingly and willfully fail to: (i) appear

21  as ordered for all court appearances, (ii) surrender as ordered

22  for service of sentence, (iii) obey all conditions of any bond,

23  and (iv) obey any other ongoing court order in this matter.

24          d)   Not to commit any crime; however, offenses which

25  would be excluded for sentencing purposes under U.S.S.G.

26  § 4A1.2(c) are not within the scope of this agreement.

27          e)   To not knowingly and willfully fail to be truthful

28  at all times with Pretrial Services, the U.S. Probation Office,

14

1  and the Court.

2      f)   To pay the applicable special assessments at or

3  before the time of sentencing unless defendant lacks the ability

4  to pay.

5                      THE USAO'S OBLIGATIONS

6      19.   If defendant complies fully with all defendant's

7  obligations under this agreement, the USAO agrees:

8      a)   To abide by all sentencing stipulations contained

9  in this agreement.

10     b)   Except for criminal tax violations (including

11 conspiracy to commit such violations chargeable under 18 U.S.C.

12 § 371), not to further prosecute defendant for violations of

13 Title 18, United States Code, Sections 2422, 2422(a), 2423(a),

14 and 2(b) arising out of defendant's conduct as charged in counts

15 two, four through twelve, seventeen, nineteen, and twenty of the

16 criminal complaint filed on or about May 6, 2003, in the Central

17 District of California bearing Magistrate Case No. 03-0969M.

18 Defendant understands that the USAO is free to prosecute

19 defendant for any other unlawful past conduct or any unlawful

20 conduct that occurs after the date of this agreement.   Defendant

21 agrees that at the time of sentencing the Court may consider the

22 uncharged conduct in determining the applicable Sentencing

23 Guidelines range, where the sentence should fall within that

24 range, and the propriety and extent of any departure from that

25 range.

26     c)   At the time of sentencing, provided that defendant

27 demonstrates an acceptance of responsibility for the offenses up

28 to and including the time of sentencing, to recommend a two-level

                              15

1  reduction in the applicable sentencing guideline offense level,
2  pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary,
3  move for an additional one-level reduction if available under
4  that section.

5                        BREACH OF AGREEMENT

6       20.  If defendant, at any time between the execution of this
7  agreement and defendant's sentencing on a non-custodial sentence
8  or surrender for service on a custodial sentence, knowingly
9  violates or fails to perform any of defendant's obligations under
10  this agreement ("a breach"), the USAO may declare this agreement
11  breached.  If the USAO declares this agreement breached, and the
12  Court finds such a breach to have occurred, defendant will not be
13  able to withdraw defendant's guilty pleas, and the USAO will be
14  relieved of all of its obligations under this agreement.

15      21.  Following a knowing and willful breach of this
16  agreement by defendant, should the USAO elect to pursue any
17  charge that was either dismissed or not filed as a result of this
18  agreement, then:

19           a)   Defendant agrees that the applicable statute of
20  limitations is tolled between the date of defendant's signing of
21  this agreement and the USAO's discovery of any knowing and
22  willful breach by defendant.

23           b)   Defendant gives up all defenses based on the
24  statute of limitations, any claim of preindictment delay, or any
25  speedy trial claim with respect to any such prosecution, except
26  to the extent that such defenses existed as of the date of
27  defendant's signing of this agreement.

28  //

                              16

<u>LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

22.   Defendant gives up the right to appeal any sentence imposed by the Court, including any order of restitution, and the manner in which the sentence is determined, provided that (a) the sentence is within the total statutory maximum specified above and is constitutional, (b) the Court does not depart upward in offense level or criminal history category, and (c) the Court determines that the total offense level is 18 or below and imposes a sentence within the range corresponding to the determined total offense level.   Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

23.   The USAO gives up its right to appeal the Court's Sentencing Guidelines calculations, provided that (a) the Court does not depart downward in offense level or criminal history category and (b) the Court determines that the total offense level is 18 or above.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

24.   Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to re-sentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement,

17

1  (b) ask the Court to void the entire plea agreement and vacate

2  defendant's guilty pleas on any remaining counts of conviction,

3  with both the USAO and defendant being released from all of their

4  obligations under this agreement, or (c) leave defendant's

5  remaining convictions, sentence, and plea agreement intact.

6  Defendant agrees that the choice among these three options rests

7  in the exclusive discretion of the USAO.

8                          <u>COURT NOT A PARTY</u>

9       25.   The Court is not a party to this agreement and need not

10  accept any of the USAO's sentencing recommendations or the

11  parties' stipulations.  Even if the Court ignores any sentencing

12  recommendation, finds facts or reaches conclusions different from

13  any stipulation, and/or imposes any sentence up to the maximum

14  established by statute, defendant cannot, for that reason,

15  withdraw defendant's guilty pleas, and defendant will remain

16  bound to fulfill all defendant's obligations under this

17  agreement.  No one -- not the prosecutor, defendant's attorney,

18  or the Court -- can make a binding prediction or promise

19  regarding the sentence defendant will receive, except that it

20  will be within the total statutory maximum.

21                     <u>NO ADDITIONAL AGREEMENTS</u>

22       26.   Except as set forth herein, there are no promises,

23  understandings or agreements between the USAO and defendant or

24  defendant's counsel.  Nor may any additional agreement,

25  understanding or condition be entered into unless in a writing

26  //

27  //

28  //

                              18

1 | signed by all parties or on the record in court.

2 |     This agreement is effective upon signature by defendant and

3 | an Assistant United States Attorney.

4 | AGREED AND ACCEPTED

5 | UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF CALIFORNIA

6 |

    DEBRA W. YANG

7 | United States Attorney

8 |

9 |

    RODRIGO A. CASTRO-SILVA            5/6/04

10 | Assistant United States Attorney     Date

11 |

12 |                     FOR!     5/7/04

    TERESA MACK                   Date

13 | Assistant United States Attorney

14 |

15 |     I have read this agreement and carefully discussed every

16 | part of it with my attorney.  I understand the terms of this

17 | agreement, and I voluntarily agree to those terms.  My attorney

18 | has advised me of my rights, of possible defenses, of the

19 | Sentencing Guideline provisions, and of the consequences of

20 | entering into this agreement.  No promises or inducements have

21 | been made to me other than those contained in this agreement.  No

22 | one has threatened or forced me in any way to enter into this

23 | //

24 | //

25 | //

26 | //

27 | //

28 | //

19

1  agreement.  Finally, I am satisfied with the representation of my

2  attorney in this matter.

3

4  _____          _5/5/04_____

   MARC JOHN COLLINS RECTOR                    Date

5  Defendant

6

7       I am MARC JOHN COLLINS RECTOR's attorney.  I have carefully

8  discussed every part of this agreement with my client.  Further,

9  I have fully advised my client of his rights, of possible

10 defenses, of the Sentencing Guidelines' provisions, and of the

11 consequences of entering into this agreement.  To my knowledge,

12 my client's decision to enter into this agreement is an informed

13 and voluntary one.

14

15 _____          _5/5/04_____

   DAVID SCHAFER                               Date

16 Counsel for Defendant

   Marc John Collins Rector

17

18

19

20

21

22

23

24

25

26

27

28

                              20

CERTIFICATE OF SERVICE

I, **RAQUEL GARCIA**, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**PLEA AGREEMENT FOR DEFENDANT MARC JOHN COLLINS RECTOR**

service was:

| | | |
|---|---|---|
| [ ] | Placed in a closed envelope, for collection and interoffice delivery addressed as follows: | [ X ] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows: |
| [ ] | By hand delivery addressed as follows: | [] By facsimile as follows: |
| [ ] | By messenger as follows: | [ ] By federal express as follows: |

**David Schafer**
**Assistant Federal Public Defender**
**22 South Clinton Avenue**
**Station Plaza #4, 4th Floor**
**Trenton, New Jersey 08609**

This Certificate is executed on May 7, 2004, at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

**RAQUEL GARCIA**

# EXHIBIT B



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-TP-80006-MIDDLEBROOKS/JOHNSON

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

MARC COLLINS-RECTOR,

        Defendant.

_____/

### ORDER

THIS CAUSE has come before the Court upon Defendant's Unopposed Motion for Modification of Conditions of Supervised Release, filed on November 18, 2005. The Court being fully advised in the premises, it is

ORDERED AND ADJUDGED that the Motion is hereby GRANTED; business travel by the defendant to New York City, Washington, DC and Los Angeles, CA will be permitted with prior notification to the supervising United States Probation Officer. All other conditions of supervised release remain in effect.

DONE AND ORDERED at Miami, Florida, this _____ day of January, 2006.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc:    AUSA (WPB office); Stephen J. Binhak, Esq.; Paul Cresce, USPO



# EXHIBIT C

**U.S. PROBATION OFFICE**
**SOUTHERN DISTRICT OF FLORI**

## INFORMATION FOR INDIVIDUALS CONVICTED OF FELONY OFFENSES

**I.     CIVIL RIGHTS**

Florida Law deprives convicted felons of certain Civil Rights including the right to vote, serve on a jury, hold public office, and restricts the issuance and renewal of many professional licenses such as real estate and insurance. Upon final expiration of your supervision, providing you have no outstanding criminal charges or outstanding monetary obligations as a result of your criminal conviction, you may apply for Restoration of Civil Rights lost in the State of Florida **with exception of the right to own and possess firearms.** You may be issued a restoration certificate by the Office of Executive Clemency as soon as your application has been reviewed by the Florida Parole Commission and it has been determined that you meet the qualifications for restoration. Specific authority to own or possess a firearm may be reinstated by the State of Florida and the United States Treasury as indicated below.

**II.    FIREARMS**

Federal law forbids persons with felony convictions or discharges from the Armed Forces under dishonorable conditions to possess firearms, ammunition, or explosives. The penalty is 10 years imprisonment and/or a $250,000 fine, Florida law makes possession of a firearm by a felon a second degree felony punishable by up to 15 years imprisonment. Violation of these laws is a violation of probation, parole, and supervised release, and could result in an additional term of imprisonment for that violation.

You must request an application for the State of Florida, Office of Executive Clemency, for specific authority to own and possess firearms **8 years** after the date of your release from supervision. Current Federal law provides that when you have obtained a restoration of civil rights and specific authority from the State, **you must then make separate application to the U.S. Treasury Department to be relieved of disabilities suffered under the Federal Firearms Act.**

**III.   DRUGS**

Any use of illicit drugs while under supervision in this district will not be tolerated and may result in violation proceedings. The Anti-Drug Abuse Act of 1988, and the Violent Crime Control and Law Enforcement Act of 1994, **requires** revocation if an offender is found by the Court or the Parole Commission to be in possession of a controlled substance.

United States Probation Officers have authority to obtain urine specimens from any person under supervision. Failure to submit a urine specimen upon request will result in notification to the Court or the Parole Commission and possible violation proceedings.

**IV.    TRAVEL**

You may not leave the Southern District of Florida without permission of the Probation Officer. Any travel outside the district requires advance **written** permission. No travel will be allowed during the initial assessment period of 60 days, except for verifiable emergency situations. All requests for travel within the United States should be made at least 2 weeks in advance; requests for travel outside the United Stated should be made 30 days in advance as permission must be granted by the Court/Parole Commission. Travel requests may be denied if any monetary obligations are delinquent or if the cost of travel would interfere with Court ordered payments.

The Southern District of Florida consists of the following counties:

| | | | |
|---|---|---|---|
| **Dade** | **St. Lucie** | **Palm Beach** | **Okeechobee** |
| **Broward** | **Highlands** | **Martin** | **Indian River** |
| **Palm Beach** | **Okeechobee** | **Monroe** | |

**ACKNOWLEDGMENT:** I have read, or had read to me, the above statements. I understand that I am not to vote, serve on a jury, run for public office or conceal my felony status from a bonding company (either directly or through an employer), lending institution, licensing agency, or firearms dealer). I further understand the travel restrictions and the policy forbidding the use of possession of drugs and firearms.

Signed: _____     Date: 10/12/04

Witness: _____     Date: 10/12/04

PROB 7A
(Mod. 11/01)

**Conditions of Probation and Supervised Release**

# UNITED STATES DISTRICT COURT
## for the
### District of New Jersey

Name:    Mark Collins-Rector                         Docket No.: 04-363-01
Address:   17962 Wagon Wheel Drive
          Boca Raton, Florida 33431                 Reg. No.: 25879-050

Under the terms of your sentence, you have been placed on supervised release by the Honorable <u>Mary L. Cooper</u>, United States District Judge, for the District of New Jersey. Your term of supervision is for a period of <u>3 years</u> commencing <u>upon release from confinement</u>.

**Sentencing Reform Act of 1984. No Departure.**

**Date of Sentence: 10/06/04**
**Offense: Ct. 5: Transportation of a Minor with Intent to Engage in Sexual Activities; Ct. 1,3,5 and 7: Travel in Interstate Commerce with Intent to Engage in Sexual Activities with a Minor; Ct. 2,4,6 and8: Transportation of a Minor with Intent to Engage in Sexual Activities**
**Sentence: 3 Years Supervised Release**

While on supervised release, you shall not commit another Federal, state, or local crime and shall not possess an illegal controlled substance. Revocation of probation and supervised release is mandatory for possession of an illegal controlled substance. You must submit to one drug test within 15 days of commencement of supervised release and at least two tests thereafter as determined by the probation officer.

**CHECK IF APPROPRIATE:**

[X]     As a condition of supervision, you are instructed to pay a fine in the amount of <u>$200.00</u>; it shall be paid in the following manner: <u>Pay at a rate of $25.00 per month</u>.

[   ]    As a condition of supervision, you are instructed to pay restitution in the amount of $_____ To ___ _____; it shall be paid in the following manner: _____.

[   ]    The defendant shall report in person to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

[X]     The defendant shall not possess a firearm or destructive device. Probation must be revoked for possession of a firearm.

**SPECIAL ASSESSMENT: $900.00 DUE IMMEDIATELY.**

**It is the order of the Court that you shall comply with the following standard conditions:**

(1) The defendant shall not commit another federal, state, or local crime during the term of supervision;

(2) The defendant shall not illegally possess a controlled substance;

(3) If convicted of a felony offense, the defendant shall not possess a firearm or destructive device;

(4) The defendant shall not leave the judicial district without the permission of the court or probation officer;

(5) The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

(6) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

(7) The defendant shall support his or her dependents and meet other family responsibilities;

(8) The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;

(9) The defendant shall notify the probation officer within seventy-two hours of any change in residence or employment;

(10) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances;

(11) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

(12) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

(13) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

(14) The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

(15) The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

(16) As directed by the probation officer, you shall notify third-parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement;

**The special conditions ordered by the Court are as follows:**

The defendant shall refrain from the use of alcohol and shall submit to testing to ensure compliance. It is further ordered that the defendant submit to evaluation and treatment as directed by the U.S. Probation

Office. The defendant shall abide by the rules of any program and remain in treatment until satisfactorily discharged with the approval of the U.S. Probation Office.

The defendant shall submit to an initial inspection by the probation office, and to any unannounced examinations during supervision, of the defendant's computer equipment. The defendant shall allow the installation on the defendant's computer of any hardware or software systems which monitor computer use. The defendant shall abide by the standard conditions of computer monitoring that have been adopted by this court.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

The defendant shall refrain from the illegal possession and/or use of drugs and shall submit to urinalysis or other forms of testing to ensure compliance. It is further ordered that the defendant shall submit to drug treatment, on an outpatient or inpatient basis, as directed by the U.S. Probation Office. The defendant shall abide by the rules of any program and shall remain in treatment until satisfactorily discharged with the approval of the U.S. Probation Office.

The defendant shall provide the U.S. Probation Office with full disclosure of his financial records to include yearly income tax returns upon the request of the U.S. Probation Office. The defendant shall cooperate with the probation officer in the investigation of his financial dealings and shall provide truthful monthly statements of his income.

The defendant shall participate in a mental health program for evaluation and/or treatment as directed by the U.S. Probation Office. The defendant shall remain in treatment until satisfactorily discharged and with the approval of the U.S. Probation Office.

The defendant shall register with the state sex offender registration agency in any state where the defendant resides, is employed, carries on a vocation, or is a student, as directed by the probation officer.

The defendant shall follow the directions of the U.S. Probation Office regarding any contact with children of either sex, under the age of 18. The defendant shall not obtain employment or perform volunteer work which includes, as part of its job/work description, contact with minor children. The defendant shall maintain, within his or her residence, or within any outside establishment within his/her control or custody, a collection of films, slides, pictures, tapes, videotapes or other form of pictorial representation whose subject matter involves minor children of either sex and can be deemed to be pornographic. The probation officer shall have the right to reasonable search of the defendant, his/her residence, or any other establishment within the defendant's custody or control, and shall, if necessary, request the assistance of other law enforcement personnel to enforce the provisions of this special condition.

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision or (2) extend the term of supervision and/or modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions, and have been provided a copy of them.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

You shall carry out all rules, in addition to the above, as prescribed by Christopher Maloney, Chief U.S. Probation Officer, or any of his associate Probation Officers.

**MAIL WRITTEN REPORTS ON THE LAST DAY OF THE MONTH TO:**

(Signed)   X _____          10/6/04
            Mark Collins-Rector                 Date
            Defendant

            _____            10/6/04
            MaryEllyn Muller                    Date
            U.S. Probation Officer/Designated Witness

                                                10/12/04

# CLARIFICATION OF SUPERVISION CONDITIONS

## SOUTHERN DISTRICT OF FLORIDA

1.  You may not associate with anyone who has been convicted of a felony or who is engaged in criminal behavior, without the permission of the probation officer. This includes face-to-face contacts and telephone or written communications. Any accidental or incidental contacts must be reported to the probation officer as per your conditions of supervision (probation/supervised release, 72 hours; parole, 48 hours).

   It is your responsibility to determine whether or not the individuals you regularly associate with have been convicted of a crime or are engaged in criminal activities.

2.  To "report as directed" means to give an account of yourself. This includes responding fully and truthfully to all inquiries from the probation officer.

3.  Except in emergency situations, travel requests must be made two weeks in advance. Requests for international travel should be requested at least six weeks in advance. Travel will be granted only upon a showing of good cause.

4.  Financial statements will be required at least annually or more frequently as directed by the probation officer. You may be required to provide copies of supporting documentation.

5.  Copies of income tax returns must be submitted to the probation officer immediately after filing.

6.  Employment must be approved by the probation officer and proof of employment must be provided. If self-employment is approved, your books and records must be open to review by the probation officer.

Receipt Acknowledged: _____

U.S. Probation Officer: _____

Date: _____

Appendix G

# **<u>EXHIBIT D</u>**



Richard Katz, M.D.
Morton Schneider, M.D.
Steven Albert, M.D.
Alison Bender Haimes, M.D.
Stephen D. Greenberg, M.D.
Douglas R. DeCorato, M.D.
Gavin L. Duke, M.D.

**EAST RIVER**
MEDICAL IMAGING, PC

Barbara H. Braffman, M.D.
Robert Ludwig, M.D.
Paul Choi, M.D.
Sean Herman, M.D.
Clyde Hershan, M.D.
Gwen Harris, M.D.

519 & 523 East 72nd Street • New York, NY 10021  •  430 East 59th Street, Sutton Place • New York, NY 10022
Tel: 212-288-1575  •  Fax: 212-288-7616  •  www.eastriverimaging.com

JOHN CARONNA, MD
520 EAST 70TH STREET STARR 613
NEW YORK, NY 10021

**Patient Name:** MARC COLLINS
**Exam Date:** 2/28/2006

**ID#:** 364976
**Accession#:** 4250337

Dear Dr. Caronna,

## MRI SCAN OF THE BRAIN WITH GADOLINIUM

**CLINICAL HISTORY:** 46 year old male with fainting spells for two weeks and questionable seizure.

The examination was performed with T1 weighted axial and sagittal images and axial FLAIR, T2 weighted, and diffusion weighted images of the brain. Following the intravenous administration of gadolinium, axial and coronal T1 weighted images were obtained. Coronal thin section T1 and FLAIR sequence was performed through the anterior temporal lobes.

No prior studies are available for comparison.

The fourth ventricle is midline.  The cerebellum is unremarkable. Mild T2/FLAIR signal intensity is seen in the right posterior pons.

The lateral ventricles are normal in size, shape and configuration.

Scattered nonenhancing punctate T2/FLAIR signal intensity foci are seen in the centrum semiovale as well as in the frontal subcortical white matter bilaterally.  Solid intermediate T1 and T2 signal intensity extra-axial broad based dural based lesion is noted along the right frontal operculum measuring 2.2 x 1.2 x 2.1 cm in AP, transverse, and craniocaudad dimensions, respectively and demonstrates solid prominent enhancement after gadolinium administration.   Adjacent dural enhancement is noted. Minimal mass effect on the adjacent frontotemporal opercular gyri is noted without underlying parenchymal signal intensity abnormality. There is no evidence of other intracranial or parenchymal pathological enhancement.

Evaluation of the anterior temporal lobes demonstrates no evidence of significant asymmetric signal intensity or size.

There is no evidence of hemorrhage or extra-axial fluid collection.

Normal flow voids are identified in the supraclinoid internal carotid arteries and visualized vertebral basilar system.

PATIENT NAME: MARC COLLINS   ACCOUNT: 364976

The tympanomastoid air cells and orbital soft tissues are unremarkable.  Mucosal thickening is noted in the right ethmoid and frontal sinuses.

## CONCLUSION

Solid enhancing extra-axial dural based lesion in the right frontotemporal operculum with minimal mass effect on the adjacent gyri.  These findings are most consistent with a meningioma.

Nonenhancing white matter signal intensity foci in the centrum semiovale and subcortical frontal white matter.  This is nonspecific in appearance and may be seen in the setting of migraines as well as vasculitides and other disorders.

Very truly yours,

PAUL CHOI, MD

FILMS AND PACS
Transcribed by: KRISTY ROSOFSKY
Date/Time Transcribed:  3/1/2006 7:21:43 AM

Electronically signed by PAUL CHOI, MD

PATIENT NAME: MARC COLLINS   ACCOUNT: 364976

# EAST RIVER MEDICAL IMAGING, PC   www.eastriverimaging.com

*PET/CT • MRI • OPEN MRI • MULTIDETECTOR SPIRAL CT • BONE DENSITY • ULTRASOUND • NUCLEAR MEDICINE*
*X-RAY • CORONARY CT ANGIOGRAPHY • VIRTUAL COLONOSCOPY • CT/MR ANGIOGRAPHY*

**The New York Hospital Laboratories**
525 East 68th Street, New York, N.Y. 1  1  (212)746-0665
Debra G. B. Leonard, M.D.,Ph.D., Director of Clinical Laboratories

| | | |
|---|---|---|
| Patient Name: **COLLINS, MARC** | CLIENT INFORMATION: | |
| Med Rec #:  (01213)042202080 | CARONNA, JOHN J MD | |
| Date of Birth: 10/16/1959 Sex: M | 525 E. 68 ST. ST-661 | |
| Req#: | NEW YORK          NY 100210000 | |
| | Client 01213NEUROLOGY | |

| | | | | | |
|---|---|---|---|---|---|
| Coll Date:  02/28/2006 | Recvd Date:  02/28/2006 | Rpt Date:  03/02/2006 |
| Coll Time:  1617 | Recvd Time:  1732 | Rpt Time:  0724 |

### FINAL

| TEST NAME | ABNORMAL | | NORMAL | REFERENCE | UNITS |
|---|---|---|---|---|---|
| **COMPLETE BLOOD COUNT** | | | | | |
| WBC | 19.8 | H | | 3.4-11.2 | K/uL |
| RBC | | | 5.68 | 4.40-5.90 | M/uL |
| HGB | | | 17.6 | 13.3-17.7 | g/dL |
| HCT | | | 51.4 | 40.0-52.0 | % |
| MCV | | | 90.5 | 81.0-100.0 | fL |
| MCH | | | 31.0 | 27.0-34.0 | pg |
| MCHC | | | 34.2 | 32.0-36.0 | g/dL |
| RDW | 14.1 | H | | 11.0-14.0 | % |
| PLATELET | | | 370 | 150-450 | K/uL |
| MPV | | | 9.4 | 8.0-12.0 | fL |
| **AUTOMATED DIFFERENTIAL** | | | | | |
| NEUT % | 77.3 | H | | 45.0-75.0 | % |
| LYMPH % | 14.8 | L | | 20.0-50.0 | % |
| MONO % | | | 5.7 | 2.0-11.0 | % |
| EOS % | | | 1.8 | 0.0-5.0 | % |
| BASO % | | | 0.4 | 0.0-1.0 | % |
| NEUT ABS | 15.3 | H | | 2.1-4.9 | K/uL |
| LYMPH ABS | | | 2.9 | 1.4-2.9 | K/uL |
| MONO ABS | 1.1 | H | | 0.2-0.9 | K/uL |
| EOS ABS | 0.4 | H | | 0.0-0.3 | K/uL |
| BASO ABS | | | 0.1 | 0.0-0.1 | K/uL |
| **MISCELLANEOUS HEMATOLOGY** | | | | | |
| SED RATE | | | 2 | 0-15 | mm/hr |
| **ROUTINE CHEMISTRY** | | | | | |
| GLUCOSE | 66 | L | | 70-105 | mg/dL |
| GLUCOSE, PLASMA | | | 85 | 70-105 | mg/dL |
| UREA NITROGEN | | | 20 | 5-25 | mg/dL |
| CREATININE | | | 1.2 | 0.5-1.5 | mg/dL |
| SODIUM | | | 140 | 133-147 | mmol/L |
| POTASSIUM | | | 4.6 | 3.2-5.2 | mmol/L |
| CHLORIDE | | | 103 | 94-110 | mmol/L |
| CO2 | | | 24 | 22-32 | mmol/L |
| ANION GAP | | | 13 | 05-17 | |
| CALCIUM | | | 9.7 | 8.5-10.5 | mg/dL |

L=LOW, H=HIGH

Page:  1
CONTINUED

**The New York Hospital Laboratories**
525 East 68th Street, New York, N.Y. 1   1  (212)746-0665
Debra G. J. Leonard, M.D.,Ph.D., Director of Clinical Laboratories

| | |
|---|---|
| Patient Name:  **COLLINS, MARC**<br>Med Rec #:      (01213)042202080<br>Date of Birth: 10/16/1959 Sex: M<br>Req#: | CLIENT INFORMATION:<br>CARONNA, JOHN J MD<br>525 E. 68 ST. ST-661<br>NEW YORK                    NY 100210000<br>Client 01213NEUROLOGY |

| | | |
|---|---|---|
| Coll Date:  02/28/2006<br>Coll Time:  1617 | Recvd Date:  02/28/2006<br>Recvd Time:  1732 | Rpt Date:  03/02/2006<br>Rpt Time:  0724 |

### FINAL

| TEST NAME | ABNORMAL | NORMAL | REFERENCE | UNITS |
|---|---|---|---|---|
| **ROUTINE CHEMISTRY** | | | | |
| PROTEIN, TOTAL | | 7.0 | 5.5-8.0 | g/dL |
| ALBUMIN | | 4.3 | 3.0-5.0 | g/dL |
| BILIRUBIN TOT | | 0.8 | 0.2-1.3 | mg/dL |
| AST | | 22 | 0-45 | U/L |
| ALT | | 16 | 0-45 | U/L |
| ALKALINE PHOS | | 89 | 25-95 | U/L |
| **ENDOCRINOLOGY - THYROID FUNCTION** | | | | |
| THYROXINE(T4) | | 9.43   f | 4.50-12.00 | ug/dL |

New reference values effective 2/14/2006.

FOOTNOTE ADDED ON   03/01/06   AT 1007 BY DISCERN

| | | | | |
|---|---|---|---|---|
| FREE T4 INDEX | | 3.47   f | 1.95-5.90 | CALC R |

New reference values effective 1/17/2006.

FOOTNOTE ADDED ON   03/01/06   AT 1007 BY DISCERN

| | | | | |
|---|---|---|---|---|
| T-UPTAKE | | 36.8   f | 32.0-48.4 | %Uptak |

New reference values effective 1/17/2006.

FOOTNOTE ADDED ON   03/01/06   AT 1005 BY DISCERN

| | | | | |
|---|---|---|---|---|
| THYROTROPIN/TSH | | 0.61   f | 0.34-5.60 | mU/L |

New reference values effective 1/17/2006.

FOOTNOTE ADDED ON   03/01/06   AT 1030 BY DISCERN

f=FOOTNOTE

Page:  2
CONTINUED

**he New York Hospital Labc** **`tories**
525   ut 68th Street, New York, N.Y. 1  .1  (212)746-0665
**Debra G. B. Leonard, M.D.,Ph.D., Director of Clinical Laboratories**

| | |
|---|---|
| Patient Name:  **COLLINS, MARC**<br>Med Rec #:     (01213)042202080<br>Date of Birth: 10/16/1959 Sex: M<br>Req#: | CLIENT INFORMATION:<br>CARONNA, JOHN J MD<br>525 E. 68 ST. ST-661<br>NEW YORK                   NY 100210000<br>Client 01213NEUROLOGY |

| | | | |
|---|---|---|---|
| Coll Date:  02/28/2006 | Recvd Date:  02/28/2006 | Rpt Date:  03/02/2006 |
| Coll Time:  1617 | Recvd Time:  1732 | Rpt Time:  0724 |

## FINAL

| TEST NAME | ABNORMAL | NORMAL | REFERENCE | UNITS |
|---|---|---|---|---|
| **TUMOR MARKERS** | | | | |
| PSA | | 2.05   f | 0.00-4.00 | ng/mL |
| PLEASE NOTE: | | | | |
| Effective 1/17/2006: Values with new method are | | | | |
| 10-15% HIGHER at levels > or = 6 ng/mL. | | | | |
| | | | | |
| PSA is performed by CHEMILUMINESCENCE IMMUNOASSAY | | | | |
| (two-site sandwich format) on the Beckman Coulter | | | | |
| UNICEL DXi 800, using reagent supplied by Beckman | | | | |
| Coulter Diagnostics. Values obtained with different | | | | |
| assay methods or kits can not be used interchangeably. | | | | |
| | | | | |
| The result can not be Interpreted as absolute evidence | | | | |
| of the presence or absence of malignant disease. | | | | |
| FOOTNOTE ADDED ON  02/28/06  AT 1921 BY DISCERN | | | | |
| **DIAGNOSTIC SEROLOGY** | | | | |
| C-REACTIVE PROT | | 0.46 | 0.30-0.80 | mg/dL |

f=FOOTNOTE

Page:  3
END OF CHART

NOTE: If the patient's age/sex are not provided on the test requisition then any
      reference ranges listed are male adult.



COLLINS,MARC    ID:364976    02-28-200

East River Medical Imaging    PC    Page 2 of



East River Medical Imaging          PC                          Page 1 of

# EXHIBIT E



# CORNELL
U N I V E R S I T Y

**NEW YORK PRESBYTERIAN**
H O S P I T A L

John J. Caronna, M.D.
*Louis and Gertrude Feil Professor of Neurology*
*Vice Chairman, Department of Neurology and Neurosciences*

525 East 70th Street
New York, NY 10021
Telephone: 212 746-2304
Fax: 212 746-8742

March 17, 2006

**Re: Marc Collins**

Gentlemen:

I am a Professor of Neurology and the Vice-Chairman of the Department of Neurology and Neurosciences at Weill Medical School of Cornell University. In this capacity I am treating Marc Collins for epileptic seizures caused by a brain tumor. In February, 2006 Mr. Collins had a convulsion in his hotel room and was noted by the hotel doctor to have paralysis of the left side of his body that lasted until the following day.

I saw him in neurologic consultation on 2/28/06 and ordered an MRI scan of the brain that showed a tumor in the right hemisphere. I, therefore, advised Mr. Collins that the tumor was causing pressure and damage to the surrounding brain tissue and that he should have surgery done immediately to reduce his likelihood of having further seizures and to prevent enlargement of the tumor that could cause further brain damage and eventually could lead to coma and death. I have seen Mr. Collins several times to monitor his condition and adjust his medications.

In consultation with my colleagues I have determined that Professor David Thomas, Professor of Neurosurgery at The Institute of Neurology and Neurosurgery at The National Hospital Queen Square, London, is the best person to perform this surgery. Professor Thomas has had extensive experience in stereotactic and functional neurosurgery and in the field of neuro-oncology, that is, in the treatment of brain tumors. I have referred Mr. Collins to Professor Thomas in London and Professor Thomas has agreed to undertake his evaluation and treatment. I, therefore, have recommended to Mr. Collins that he go to London for evaluation and treatment and that following surgery he will need a period of recovery lasting from three to six months.

If you require any further information, you may contact me.

Sincerely yours,

John J. Caronna, M.D.

JJC:CH

# **<u>EXHIBIT F</u>**

Date: Fri, 17 Mar 2006 09:54:24 -0500
From: Carol Hopkins <chopkins@med.cornell.edu>
Subject: Fwd: RE: referral of patient Marc Collins from Dr. John Caronna
Sender: Carol Hopkins <chopkins@med.cornell.edu>
To: jcaronna@med.cornell.edu
X-PMX-Version: 5.1.2.240295, Antispam-Engine: 2.3.0.1,
 Antispam-Data: 2006.3.17.63111
Original-recipient: rfc822;jcaronna@mail.med.cornell.edu

Date: Fri, 17 Mar 2006 14:23:43 +0000
From: Mary Lesley <m.lesley@ion.ucl.ac.uk>
Subject: RE: referral of patient Marc Collins from Dr. John Caronna
To: chopkins@med.cornell.edu
Original-recipient: rfc822;chopkins@med.cornell.edu

To:     Prof Dr John J Caronna
        Professor and Vice Chairman, Department of Neurology & Neurosciences
        The New York-Presbyterian Hospital-Cornell University Medical Center

Dear Dr Caronna

Thank you for your email about Mr Marc Collins. I would be happy to see him in London and make plans
for operating on his sphenoid wing meningioma. I could offer him an outpatient appointment on Tuesday
28th March at 3.30pm. This will be at The Private Consulting Rooms, 23 Queen Square, London WC1N 3BG.

Please give my regards to Dr Gutin.

Yours sincerely


David Thomas


David G T Thomas
Professor of Neurological Surgery
Division of Neurosurgery, Box 32
The National Hospital for Neurology & Neurosurgery
Queen Square
London WC1N 3BG

Tel:    +44 20 7829 8750
Fax:    +44 20 7278 7894
email: neurological.surgery@ion.ucl.ac.uk

 From: Beth McLaughlin <Beth.McLaughlin@CromwellHospital.com>
 To: 'Carol Hopkins' <chopkins@med.cornell.edu>
 Cc: "'neurological.surgery@ion.ucl.ac.uk'"
         <neurological.surgery@ion.ucl.ac.uk>
 Subject: RE: referral of patient Marc Collins from Dr. John Caronna
 Date: Fri, 17 Mar 2006 09:26:04 -0000

 Dear Dr Caronna

 I am forwarding your email to Professor Thomas to his email address at the
 National Hospital where he is based.  He will be able to access his messages
 easier and more frequently than at the Gamma Knife Centre.

 Yours sincerely

 Beth McLaughlin
 Gamma Knife Administrative Co-ordinator